FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 13 2020

JAMES W. McCORMACK, CLERK
By:_____ DEP CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| STAN HASTINGS, individually and on behalf of other similarly situated.<br><br>　　　　　　　Plaintiff,<br>v.<br><br>GERBER LIFE INSURANCE COMPANY and JOHN DOE CORPORATION d/b/a AMERICAN BENEFITS<br><br>　　　　　　　Defendants. | Case No.: 4:20-cv-01345-BSM<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES, STATUTORY DAMAGES, AND REQUEST FOR INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

**Preliminary Statement**

1.　　As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (July 6, 2020).

2.　　Plaintiff Stan Hastings brings this action under the TCPA alleging that Defendants Gerber Life Insurance Company ("Gerber Life"), commissioned automated telemarketing calls for purposes of promoting their goods and services without his prior express written consent. On the pre-recorded calls received by Mr. Hastings, there was no actual entity identified by the caller. As such, he believes that Gerber Life physically dialed the calls. Indeed,

This case assigned to District Judge ___Miller___
and to Magistrate Judge ___Deere___

Gerber Life stated as much to him. However, to the extent that "American Benefits" is actually a third party company that failed to identify itself, the Plaintiff has alternatively alleged that the calls were physically dialed by the John Doe Corporation, a telemarketing vendor hired by Gerber Life.

3.  The calls were also sent to individuals that were listed on the National Do Not Call Registry.

4.  Because these calls were transmitted using technology capable of generating thousands of similar calls per day, he sues on behalf of a proposed nationwide class of other persons who received similar calls.

5.  A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6.  Plaintiff, Stan Hastings, resides in this District.

7.  Defendants Gerber Life Insurance Company is a foreign corporation headquartered in New York that does business in this District and is registered in this District.

8.  Defendants John Doe Corporation was hired by Gerber Life and made telemarketing calls to putative class members, including the Plaintiff.

**Jurisdiction & Venue**

9.  The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

10. The Court has personal jurisdiction over the Defendants because they engaged in telemarketing conduct into this District.

11. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were made into this District.

## TCPA Background

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

15. While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

16.     "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

17.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

18.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

19.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## Factual Allegations

20.     Gerber Life offers life insurance services.

21. To sell these services, Gerber Life relies on telemarketing.

22. Gerber Life has its own telemarketing employees. *See* https://www.glassdoor.com/Job/gerber-life-insurance-jobs-SRCH_KO0,21.htm (Last Visited November 7, 2020).

23. Also, Gerber Life hired third parties, such as John Doe Corporation to conduct telemarketing.

24. While such automated technology may save time and money for Gerber Life's telemarketing efforts, it violates the privacy rights of the Plaintiff and putative class.

Calls to The Plaintiff Hastings

25. Plaintiff Hastings is a "person" as defined by 47 U.S.C. § 153(39).

26. Mr. Hastings' telephone number, (501) 680-XXXX, is registered to a cellular telephone service.

27. Mr. Hastings' telephone number has been on the National Do Not Call Registry since 2005.

28. This number is not used for commercial purposes.

29. Mr. Hastings uses the number for personal calls.

30. Mr. Hastings received multiple pre-recorded calls from Defendants.

31. The pre-recorded message stated that the caller was "American Benefits".

32. However, there is no such company.

33. Instead, a series of pre-recorded messages advertised life insurance products.

34. The calls came on multiple dates, including May 11, May 18 and May 22, 2020.

35. Finally, to identify the calling party, Mr. Hastings engaged the telemarketer on May 22, 2020.

36. During the call, Mr. Hastings was transferred to "Chris" who mentioned Gerber Life Insurance. Chris then disconnected the call and called back from 1-325-400-4917. "Chris" then connected Mr. Hastings to "Elena" at "Gerber Life Insurance Company".

37. "Elena" stated that she was in Fremont, MI.

38. Gerber Life Insurance Company has an office in Fremont, MI.

39. "Elena" indicated that he had been a licensed insurance agent with Gerber for 16 years.

40. "Elena" further advertised Gerber Life's goods and services.

41. "Elena" also informed Mr. Hastings that he could learn more about the calling company by going to "gerberlife.com".

42. Mr. Hastings then wrote directly to Gerber Life to complain about the contacts.

43. Gerber Life responded indicating that they make outbound calls.

44. Gerber Life also responded that if the plaintiff had "filled out any information online or with a survey, we could have gotten your number from there".

45. The Plaintiff did not fill out any surveys or information online related to Gerber Life.

46. The May 22, 2020 call was made from (501) 588-0069.

47. The call invaded Plaintiff's privacy and intruded upon his right to seclusion.

48. Plaintiff did not consent to receive Defendants' calls prior to the receipt of the unsolicited conduct.

### Gerber Life's Liability for John Doe's Actions, if they exist.

49. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any

violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

50. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

51. In fact, the Federal Communication Commission has instructed that sellers such as Gerber Life may not avoid liability by outsourcing telemarketing to third parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

52. As an initial matter, when Mr. Hastings contacted Gerber Life, it indicated that they made calls.

53. It further stated that they may have received his number for the call through a survey or submission online.

54. However, to the extent that "American Benefits" is a third party company, Gerber Life hired John Doe Corporation to generate new customers through telemarketing.

55. Gerber Life accepted the benefits of John Doe Corporation's illegal telemarketing by accepting customers from John Doe Corporation despite the fact that those leads were generated through illegal telemarketing.

56. Gerber Life had absolute control over whether, and under what circumstances, it would accept a customer.

57. Gerber Life determined the parameters and qualifications for customers that John Doe made telemarketing calls to.

58. First, Gerber Life restricted the geographic regions that John Doe called.

59. Second, Gerber Life failed to restrict John Doe Corporation from generating customers using pre-recorded messages.

60. Third, Gerber Life granted John Doe Corporation proprietary access to their systems to allow the information about called parties to be transferred to the Gerber Life telemarketers who are attempting to complete a sale.

61. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

### Class Action Allegations

62. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of classes of all other persons or entities similarly situated throughout the United States.

63. The Classes of persons Plaintiff proposes to represent is tentatively defined as:

<u>Robocall Class</u>: All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

<u>National Do Not Call Registry Class</u>: All persons in the United States (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days (2) but who received more than one telephone solicitation telemarketing call (3) from or on behalf of Defendants (4) with a 12-month period, (5) from four years prior the filing of the Complaint.

64. Excluded from the Classes are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

65. The Classes as defined above are identifiable through phone records and phone number databases.

66. The potential members of the Classes are at least in the hundreds. Individual joinder of these persons is impracticable.

67. The Plaintiff Hastings is a member of the Classes.

68. There are questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

    a. Whether Defendants violated the TCPA by using automated calls to contact putative class members cellular telephones;

    b. Whether Defendants placed calls without obtaining the recipients' prior express consent for the call;

    c. Whether Defendants systematically made multiple telephone calls to members of the National Do Not Call Registry Class; and

      d.  Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

69. The Plaintiff's claims are typical of the claims of class members.

70. The Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the Classes, and counsel skilled and experienced in class actions, including TCPA class actions, represents them.

71. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

72. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

73. The Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for the entire Class' membership described above.

## LEGAL CLAIMS

### First Claim for Relief
### Violation of the TCPA's Automated Call provisions

74. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

75. Defendants' calls were made without the prior express consent, or the prior express written consent, of the called parties. 47 C.F.R. § 64.1200(a)(2); 47 C.F.R. § 64.1200(f)(8).

76. The Defendants violated the TCPA by (a) using an automatic telephone dialing system to make calls to cellular telephone numbers without the required consent, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(b).

77. The Defendants' violations were willful and/or knowing.

78. The TCPA also authorizes injunctive relief, and the Plaintiff seeks injunctive relief prohibiting Defendants from calling telephone numbers using a pre-recorded voice, absent an emergency circumstance.

### Second Claim for Relief
### Violation of the TCPA's National Do Not Call Registry Provision

79. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

80. Defendants violated the TCPA and the Regulations by making, or having its agent make, two or more telemarketing calls within a 12-month period on Defendants' behalf to Plaintiff and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

81. As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

82. The Defendants' violations were knowing or willful.

## Relief Sought

WHEREFORE, for themselves and all class members, Plaintiff requests the following relief:

    A.    Injunctive relief prohibiting Defendants from calling telephone numbers using a pre-recorded voice, absent an emergency circumstance;

    B.    Because of Defendants' violations of the TCPA, Plaintiff seek for themselves and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

    C.    An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff are proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

    D.    Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**


Dated: November 13, 2020

/s/ Jason Ryburn
Jason Ryburn
Ryburn Law Firm
650 S. Shackleford Rd., Ste. 231
Little Rock, AR 72211
[o] (501) 228-8100
[f] (501) 228-7300
jason@ryburnlawfirm.com


Anthony I. Paronich (*pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[f] (508) 318-8100
anthony@paronichlaw.com